## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Douglas L. Eash, | : |
| Plaintiff, | : |
| | : |
| vs. | : Civil Action No. |
| | : |
| County of York, Pennsylvania | : |
| | : |
| and | : |
| | : |
| County of York Department of Emergency Services | : |
| | : |
| and | : |
| | : |
| Kristy Bixler, Individually and in her Official | : |
| Capacity as Director of Human Resources | : |
| | : |
| and | : |
| | : |
| Kimberly Rinker, Individually and in her Official | : |
| Capacity as Deputy Director of Human Resources | : |
| | : |
| and | : |
| | : |
| Ashli Stroud, Individually and in her Official | : |
| Capacity as East End Human Resources Representative, | : |
| County of York | : |
| | : |
| and | : |
| | : |
| John Does 1-5 | : |
| | : |
| Defendants. | : |

_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

1

Douglas L. Eash, (hereinafter, "Plaintiff") by and through his attorney, Jeremy A. Donham, Esquire of DONHAM LAW moves the Court for entry of judgment in his favor against the named Defendants and in support of such Complaint avers as follows:

## PARTIES, JURISDICTION AND VENUE

1. This Honorable Court has jurisdiction pursuant to 28 U.S.C. §1331 as this case arises under and pursuant to federal law specifically, the Fourth and Fourteenth Amendment to the United States Constitution.

2. Moreover, this Honorable Court has ancillary, pendent and supplemental jurisdiction over Plaintiff's claims arising under the laws of the Commonwealth of Pennsylvania pursuant to 28 U.S.C. §1367.

3. Venue is proper in the United States District Court for the Middle District Of Pennsylvania pursuant to 28 U.S.C. Section 1391(b) & (c), wherein the Plaintiff resides, the Defendant regularly conducts business, and where all the wrongful conduct occurred.

4. Plaintiff is an adult citizen of the Commonwealth of Pennsylvania residing in York County, Pennsylvania.

5. Defendant County of York, Pennsylvania ("York County") is a duly organized municipality and governmental entity located in the Commonwealth of

Pennsylvania with its principle place of business at 28 East Market Street, York, PA 17401.

6. Defendant County of York Department of Emergency Services ("YCDES") is located in the Commonwealth of Pennsylvania, with its principle place of business at 120 Davies Drive, York, PA 17402.

7. Individual Defendant Kristy Bixler ("Defendant Bixler") is the Director of Human Resources. Defendant Bixler is an adult citizen of the Commonwealth of Pennsylvania residing in York County, Pennsylvania.

8. Individual Defendant Kimberly Rinker ("Defendant Rinker") is the Deputy Director of Human Resources. Defendant Rinker is an adult citizen of the Commonwealth of Pennsylvania residing in York County, Pennsylvania.

9. Individual Defendant Ashli Stroud ("Defendant Stroud") is the East End Human Resources Representative for the County of York. Defendant Stroud is an adult citizen of the Commonwealth of Pennsylvania residing in York County, Pennsylvania.

10. John Does 1-5 are supervisors and administrative personnel whom the Plaintiff believes may have participated in the decision to suspend and terminate him as well as defaming him to other parties both inside YCDEA and outside of YCDES. Thus Plaintiff will amend to include these individuals whom he believes will be revealed through discovery.

11. Defendants York County and YCDES are recipients of federal financial assistance through, *inter alia*, the Federal Emergency Management Agency in support of its 911 services.

12. York County also receives federal aid, upon information and belief, in the form of grants from the federal government as well as funding for its prison through the U.S. Immigration and Customs Enforcement ("ICE") to support holding prisoners whom ICE is holding for deportation hearings.

13. Plaintiff was employed by York County and YCDES from on or about August 23, 2005 until June 29, 2018.

14. York County and YCDES exercised control and supervision over Plaintiff's employment conditions and benefits since York County pays the Plaintiff's payroll check and controls his ability to take time off from work for personal or health reasons while YCDES controls Plaintiff's weekly work schedule.

15. Further, York County's Human Resource Department handles all issues relating to the work environment and maintains control over discipline and termination of YCDES employees.

16. Plaintiff's last position with YCDES was "Operations Supervisor" a position he had held from on or about February 2007 until July 2, 2018.

17. Plaintiff earned approximately $23.74 per year ($60,000.00). He also received healthcare benefits, pension, and other incentives.

18. On or about June 22, 2018 Plaintiff initiated, via Facebook Messenger, a contact with a new 911 employee, "C.H.", during off-the-clock-hours.

19. Not unlike many other employee's working at YCDES, Plaintiff and C.H. had developed a friendship at work and struck up conversation on Facebook Messenger about their personal lives.

20. Plaintiff was not the new employee's supervisor at that time and the only contact they had at work related to a brief "observation period."

21. The Facebook Messenger conversation began as a personal discussion which reiterated earlier discussions they had undertaken at work of a general nature such as C.H.'s feelings about her new job and family issues.

22. The conversation was of a mutual nature and C.H. fully welcomed the chat, at no time explicitly or implicitly objecting.

23. In fact, on several occasions during the chat, C.H. sought out the Plaintiff for conversation and even implied that she was "stalking" the Plaintiff.

24. C.H. also stated on a number of occasions, "I hope I am not creeping you out."

25. The Plaintiff and C.H, did engage in banter regarding sexual preferences and stress reduction techniques.

26. Further, during the chat C.H. made statements of a sexual nature such as "I like being choked" "chains" "I like to switch it up" and "I stalked your profile" among other statements in chat.

27. At no time during the chat was there any indication that C.H. did not welcome the chat or pictures sent by the Plaintiff which showed a "fire cupping" session which "Michael Phelps" the famous swimming star had himself used for stress reduction.

28. At no time did either party mentioned herein engage in inappropriate private chat during work hours.

29. Again, C.H. was not assigned to Plaintiff as his subordinate and had only spent approximately 8 hours to observe the use of the phones and radio at the dispatch position, while Plaintiff was assigned as a dispatcher.

30. Upon information and belief, on June 28, 2018 C.H. filed a complaint with human resources about her chat session with the Plaintiff.

31. It is not clear to the Plaintiff as to whether C.H. asserted she had been sexually harassed, however, the defendants used this as a basis for his termination.

32. Plaintiff was contacted and told he was to meet with Defendant Rinker and Defendant Stroud both from human resources on Friday, June 29, 2018.

33. At the time of the requested meeting, Plaintiff was assigned to an overtime position from 4am to 8am as a dispatcher, had no advance notice of the meeting or reason for the same, and was not afforded a witness at the meeting as he was entitled to per workplace policy.

34. During the meeting Defendant Rinker and Defendant Stroud discussed the Facebook Messenger text chat.

35. When Plaintiff objected to the discussion of his private life and private text chat Defendant Rinker and Defendant Stroud demanded that he turn over his personal cell phone.

36. Further, when Plaintiff indicated that he would not turn over his personal cell phone and that he had a doctor's appointment he needed to attend to, the Plaintiff was threatened by Defendant Rinker and Defendant Stroud that he could not leave the property until he provided his cell phone and open up private chat logs in his Facebook Messenger application.

37. Plaintiff objected to being forced to remain in the office against his will and again stressed to Defendant Rinker and Defendant Stroud that he had a doctor's appointment to attend to and needed to leave.

38. Defendant Rinker and Defendant Stroud refused to permit him to leave until he turned over his personal cell phone and open the Facebook Messenger private chat for them to review.

39. Plaintiff eventually relented under duress and in fear of the loss of his job.

40. The text and pictures received by Defendant Rinker and Defendant Stroud were very personal since it showed private chat between he and C.H. on off-the-clock hours and that discussed very personal and private dialogue regarding their

personal sexual preferences and how he was alleviated of stress by "fire-cupping."

41. They also viewed his pictures which showed Plaintiff disrobed and lying on his stomach with the fire cups being administered. Another picture showed the after effects of the fire-cupping and stress spots.

42. Plaintiff was subsequently terminated by letter dated July 3, 2018 for the following asserted reasons: disregard for policies, procedures and rules in performance of job duties; theft or any form of dishonesty; instigating dissatisfaction among fellow employees; and sexual harassment. (Plaintiff's Exhibit A)

43. All allegations (as noted above in the termination letter) and stated as reasons for the termination were false.

44. Further, the malicious statement that Plaintiff had committed sexual harassment was blatantly false and caused the Plaintiff great embarrassment for he, his family and loved ones, and his colleagues since the text and pictures were, upon information and belief, shared with other employees, supervisors, management and administration and continue to be discussed by York County and YCDES to this day.

45. In fact, since she allegedly filed her complaint, C.H. has initiated contact with the Plaintiff seeking, *inter alia*, to solicit money.

46. Additionally, upon information and belief, C.H. lost her job with YCDES for illegal drug use.

47. Defendant Rinker executed the termination letter, upon information and belief, as directed by Defendant Bixler (attached as Plaintiff Exhibit A) and upon information and belief she and Defendant Bixler in conjunction with Defendant Stroud were the municipal officers that made the decision to terminate the Plaintiff having final policymaking authority.

48. Also, upon information and belief, the County and its commissioners and County Administrator (which for purposes of this lawsuit constitute the County) also endorsed the decision to terminate the Plaintiff based upon false statements regarding the allegation that the Plaintiff has been engaged in sexual harassment.

49. Critically, during a recent mandatory employee meeting, the Director of Human Resources, Defendant Bixler, found it "disgusting" and confirmed known sex in the workplace, however, it did not result in the termination of employees although Defendant Bixler, Defendant Rinker and Defendant Stroud and other human resource representatives knew who was involved in the sex acts at work.

50. Further, at an annual Association of Public Safety Communication Officials "APCO" dinner party, which included management, supervisors and employees, individuals furtively and openly took photos with their cell phones of women's

undergarments after women at the party including employees of the Defendants got drunk and raised their skirts to show off their undergarments.

51. Management and supervisors later discussed the photos and have knowledge of the activities, yet no disciplinary action was undertaken.

52. Once more, these functions typically involve overnight stays where management and subordinates "hook up" with drinking and sex, sometimes in groups.

53. In fact, during a 2017 dinner, undergarments were revealed in public by two female supervisors yet these female employees were never disciplined or terminated.

54. Further, a current supervisor has had a relationship with a subordinate and no disciplined occurred nor termination.

55. Furthermore, a current supervisor constantly posts Facebook comments of their wall condemning management's decisions and promoting fraternization without disciplinary action being taken.

56. Once more, "Weiner World" a local restaurant in York, is a customary place for fraternization and alcohol consumption including the "celebration of life" for a recently deceased dispatcher.

57. Moreover, a former employee was known by management to abuse alcohol on the job yet his employment was retained until the Plaintiff reported him under the influence and he was escorted home by a Deputy Sheriff.

58. Additionally, a current employee is a known substance abuser, including during 911 calls for EMS.  Plaintiff reported this to HR during a non-related meeting in June 2018 yet he retains his position.

59. Further, there are weekend trips between Supervisors and subordinates including FB posts showing liquor store purchases.

60. Remarkably, internal promotions are predominantly female and without proper interviews and a uniform selection process as prescribed by policy.

61. Consequently, after his termination, the Plaintiff filed a claim with the Pennsylvania Human Relations Commission ("PHRC") for gender based discrimination and retaliation.

62. Accordingly, Plaintiff will seek leave to amend once he has fully exhausted these claims.

63. Where applicable, York County and YCDES are liable for the acts of its agents under a theory of *Respondeat Superior*.


**COUNT 1**
**42 U.S.C. §1983 – DEPRIVATION OF LIBERTY INTEREST**
**(Plaintiff versus All Defendants)**

64. Plaintiff incorporates herein the previous averments as if fully set forth.

65. At all times relevant hereto, the Plaintiff was a public sector employee of the defendants herein.

66. The Plaintiff is a citizen of the United States of America and a resident of the Commonwealth of Pennsylvania.

67. The Plaintiff is also a public sector employee within the meaning, purview and protections of the Fourteenth Amendment to the United States Constitution.

68. At all times relevant hereto, the Defendant is a governmental entity within the meaning and purview of 42 U.S.C. § 1983.

69. Defendants' including Defendant Bixler, Defendant Rinker, Defendant Stroud, and upon information and belief, Jacqui Brininger (YCDES 911 Communications Director), Jo Ann Probst (YCDES 911 Communications, Lead Shift Supervisor), the County Administrator and Commissioners, individually and collectively, falsely deprived plaintiff his cognizable liberty interest in his professional reputation by disclosing to third parties within YCDES and outside of YCDES false and malicious disclosures, statements, and representations regarding plaintiff's confidential cell phone communications, Facebook Messenger communications, pictures from his cell phone, confidential and privileged personnel and employment record information and specifically, the statement that he had committed sexual harassment among the remaining allegations of disciplinary policy violations within the termination letter.

70. Defendants' and non-parties, as more fully noted above, individually and collectively, deprived plaintiff of his rights to a name clearing hearing during the grievance process.

71. Defendants' and non-parties, as more fully noted above, fired the Plaintiff without any process for clearing his good name and specifically denied Plaintiff meaningful Due Process.

72. Since Defendants' fired Plaintiff, Plaintiff has lost the opportunity to perform his job as an Operations Supervisor with YCDES in accordance with his significant years of professional training and experience.

73. Due to Defendants' unlawful discipline, suspension, and termination against Plaintiff, Defendants' deprived Plaintiff of his civil rights protected under the Fourteenth Amendment, and deprivation of which is a cognizable action under 42 U.S.C. §1983.

74. At the time of Defendant's actions, a reasonable public official knew or should have known that the retaliatory actions and termination of the Plaintiff violated established job rights.

75. In their denial of the meaningful, recognized full panoply of due process, Defendants' have caused Plaintiff to suffer a deprivation of procedural due process rights afforded him by the Fourteenth Amendment of the United States

Constitution, the deprivation of which is a cognizable action under Section 1983, 42 U.S.C. § 1983.

76. As a result of the actions taken by Defendant referred to above, Defendants' have caused Plaintiff to suffer damages, losses, and other harms.

77. Wherefore, Plaintiff demands judgment in his favor.

## COUNT 2
## FOURTH AMENDMENT ILLEGAL SEARCH AND SEIZURE
## 42 U.S.C. § 1983
## Plaintiff v. All Defendants

78. Plaintiff incorporates herein the previous averments as if fully set forth.

79. The Fourth Amendment states: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ...." Further, "[t]he Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government [.]" *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 613–614, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989).

80. Defendants' as more fully named above, both individually and collectively, acted and/or validated the action(s) of, and intentionally intruded upon the Plaintiff's privacy in that they demanded the personal cell phone of the Plaintiff and his Facebook Messenger account contents before they would allow Plaintiff to leave the room for his doctor's appointment.

81. The Plaintiff had a subjectively and objectively reasonable and legitimate expectation of privacy in his personal cell phone and his private Facebook Messenger account contents.

82. A reasonable person would find the intentional, malicious, and willful intrusion into the Plaintiff's personal cell phone and Facebook Messenger contents to be highly offensive and/or morally reprehensible to any reasonable person.

83. The Defendants' had no justification for taking the Plaintiff's personal cell phone against his will, and forcing him to provide to them private text chat and pictures which dissemination had occurred in private, non-working hours.

84. Furthermore, upon information and belief, some text chat and pictures had already, in some medium, been voluntarily provided by C.H.

85. Plaintiff did not and could not have consented to such a search and seizure on the part of the Defendants since he was not made aware of his right to choose therefore any search was involuntary. Additionally, he was forced to hand over his phone and to open its contents or he was told he would not be permitted to leave.

86. Wherefore, Plaintiff has suffered damages and demands judgment in his favor.

**COUNT 3**
**PENNSYLVANIA COMMON LAW CLAIMS**
**(INVASION OF PRIVACY AND DEFAMATION)**
**Article I § 8 of the Pennsylvania Constitution**
**Plaintiff v. Individual Defendants Only**

87. Plaintiff incorporates herein the previous averments as if fully set forth.

88. At all times relevant hereto, the Plaintiff was a public sector employee of the Defendants herein.

89. The Plaintiff is a citizen of the United States of America and a resident of the Commonwealth of Pennsylvania.

90. The Plaintiff is also a public sector employee who enjoyed the rights and reasonable expectations of privacy rights on his job to confidentiality, privacy, dignity, and respect within the meaning and purview of federal and state laws.

A. Invasion of Privacy

91. At all times relevant, the Individual Defendants' actions as described herein as unlawful, false, outrageous, and malicious disclosures, communications, and misrepresentations regarding Plaintiff to others were unauthorized and not privileged.

92. Defendant Rinker and Defendant Stroud intentionally prevented the Plaintiff from leaving the room in which they were situated and intruded within his personal cell phone device and his Facebook Messenger account without justification and without his voluntary assent since he was not made aware of his right not to consent to the search and was forcibly commanded to turn over the device, account text and pictures, or he would not be permitted to leave.

93. A reasonable person would find the intrusion into Plaintiff's personal cell phone and his forced disclosure of his Facebook Messenger account text and pictures to be highly offensive.

94. At the time of Defendant's disclosures to others in the Dispatch Center, a reasonable public official knew or should have known that Plaintiff had a recognized expectation of privacy and that expectation of privacy extends to his personal cell phone and personal social media accounts such as Facebook Messenger which is a private chat account within Facebook.

95. Defendant Rinker and Defendant Stroud wrongfully acquired possession of private, confidential, and personal communications from Plaintiff's Personal Cell Phone and "Facebook Messenger Account" that Plaintiff never released to Defendants, nor authorized Defendant Rinker and Defendant Stroud to possess.

96. Plaintiff never consented, authorized, or permitted Defendants to disclose Plaintiff's private and confidential information to others, including within the 911 Center or outside the 911 Center.

97. As a result of same Plaintiff has suffered economic damages and emotional pain and suffering and embarrassment.

B. Defamation

98. Defendants knew or should have known that its malicious, intentional, and retaliatory disclosures of Plaintiff's personal "Facebook Messenger" contents

were not authorized by Plaintiff, or otherwise disclosable within recognized job privilege enjoyed by Defendants.

99. Defendants published the termination letter, alleged reasons for termination including the private text chat and pictures, and individuals within and outside of York County and YCDES to whom it was published understood the defamatory meaning because they knew the Plaintiff had not committed sexual harassment as pertaining to C.H.

100.   As a result of the outrageous disclosures made by the Defendants referred to above, the Defendants have caused Plaintiff to suffer embarrassment, loss of professional esteem and reputation, and emotional harm.

101.   WHEREFORE, Plaintiff demands compensatory, and punitive damages against the Individual Defendants and any other equitable remedy that this Honorable Court deems reasonable and just.

## COUNT 4
## WRONGFUL DISCHARGE IN VIOLATION OF
## PENNSYLVANIA PUBLIC POLICY

102.   Plaintiff incorporates herein the previous averments as if fully set forth.

103.   It is a public policy of the Commonwealth of Pennsylvania that Defendants cannot discharge an employee by using the text and pictures it obtains unjustifiably and unlawfully due to an invasion of the employee's privacy.

104.   Plaintiff lost his job with YCDES because his personal cell phone and private text chat and pictures were unlawfully confiscated and his privacy violated by his human resource representatives, supervisors and other individual defendants.

105.   To allow an employer to use these laws to arbitrarily discharge an employee is a violation of public policy.

106.   The typical case involving wrongful discharge in violation of public policy is one where the "employee's termination is retaliatory and not grounded on a legitimate reason." *Goodwin v. Moyer*, 549 F. Supp. 2d 621, 636 (M.D. Pa. 2006).

107.   As a result of Plaintiff's termination, he has suffered emotional harm, embarrassment, humiliation, mental anguish and loss of self-esteem, as well as economic loss and damage to his reputation and seeks a remedy for all thereby.

## PRAYER FOR RELIEF

108. Plaintiff incorporates herein the previous averments as if fully set forth.

109. Plaintiff demands "make whole" relief including for actual economic losses, unlimited compensatory damages for emotional distress, loss of professional reputation, loss of professional opportunity, humiliation, and extreme embarrassment in an amount in excess of $150,000.00 U.S.D. (one hundred fifty thousand dollars.)

110. Plaintiff demands non-economic damages for pain and suffering, mental anguish and damages for emotional distress.

111. Plaintiff demands unlimited compensatory damages against Defendants.

112. Plaintiff demands unlimited compensatory and punitive damages against the Individual Defendants to deter, punish, and prevent future misconduct.

113. Plaintiff demands economic damages for lost Back Pay with interest, since Plaintiff's retaliatory termination.

114. Plaintiff demands an equitable decree awarding Plaintiff Front Pay until the date of Plaintiff's retirement at age 65.

115. Plaintiff demands the loss or present value of pay and retirement benefits with interest, caused by Defendants' unlawful firing.

116. Plaintiff demands all lost fringe and retirement benefits, including but not limited to, health, vision, and dental insurance, and pension and retirement benefits.

117. Plaintiff demands reinstatement and all appropriate equitable, injunctive, and/or declarative relief allowed by this Honorable Court.

118. Plaintiff demands attorney's fees, costs, expenses, with interest, incurred in vindicating his federally protected civil rights pursuant to 42 U.S.C. §1988 and as allowed by state law.

119. Plaintiff demands Expert Witness Fees, costs, and expenses, with interest.

## DEMAND FOR JURY

Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiff respectfully demands a trial by jury.

Date: January 24, 2019                    Respectfully submitted,

                                          DONHAM LAW

                                          *By: /s/ Jeremy A. Donham, Esquire*
                                          Jeremy A. Donham, Esquire
                                          Attorney I.D. 206980
                                          PO Box 487, Dellslow, WV 26531
                                          717.676.7749 (Phone)
                                          888.370.5177 (fax)