IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DOUGLAS L. EASH,        :    Civil No. 1:19-cv-141
                            :
      Plaintiff,        :
                            :
      v.            :
                            :
COUNTY OF YORK,      :
PENNSYLVANIA, et. al.,     :
                            :
      Defendants.     :   Judge Sylvia H. Rambo

## M E M O R A N D U M

Before the Court is a motion to dismiss filed by Defendants Kristy Bixler ("Bixler"), Kimberly Rinker ("Rinker"), Ashli Stroud ("Stroud," collectively the "Individual Defendants"), and County of York, Pennsylvania (the "County"), seeking to dismiss Plaintiff Douglas Eash's ("Eash") amended complaint. (Doc. 6.) For the reasons set forth below, the motion will be granted in part.

## I.    BACKGROUND

The following facts are garnered from Eash's amended complaint and are taken as true for the purpose of resolving Defendants' motion to dismiss. Eash was employed by York County at the County of York Department of Emergency Services (the "County") from 2005 to 2018. (Doc. 6, ¶ 11.) From February 2007 to July 2018, Eash held the position of Operations Supervisor. (*Id.* ¶ 14.)

On June 22, 2018, Eash initiated a private chat with C.H., a female 911 employee with the County who he did not supervise, over Facebook Messenger

during off-the-clock hours. (*Id.* ¶ 16.) The two followed up on a conversation they had during work hours, which led to further conversations, "banter regarding sexual preferences," and Eash sending photographs of himself partially disrobed and lying on his stomach after a "fire-cupping session," which he used as a stress-reduction technique. (*Id.* ¶¶ 25-27.) C.H. participated in the conversations, including their sexual content, and did not voice any objection to Eash. (*Id.* ¶¶ 23, 27 28.)

On June 28, 2018, C.H. filed a complaint with the County's human resources department regarding the conversations. (*Id.* ¶ 31.) Thereafter, Eash was instructed to attend a June 29, 2018 meeting with human resources. (*Id.* ¶ 33.) The meeting was conducted by Rinker, the Deputy Director of Human Resources, and Stroud, the East End Human Resources Representative for the County of York. (*Id.* ¶¶ 7, 8, 32.)

During the meeting, Plaintiff initially objected to discussing the conversations with C.H. because they pertained to his "private life." (*Id.* ¶ 42.) Rinker and Stroud then instructed Eash to show them the contents of the communications under threat of termination. (*Id.*) Eash eventually complied with the instruction and showed Rinker and Stroud the messages between him and C.H. out of fear of being terminated. (*Id.* ¶¶ 46-50.)

Subsequently, Eash was terminated effective July 2, 2018, and was notified by letter dated July 3, 2018. (*Id.* ¶ 51, Doc. 6-1.) The letter was signed by Rinker and allegedly drafted at the direction of Bixler, the Director of Human Resources for

the County. (Doc. 6, ¶ 51, Doc. 6-1.) It asserted that the human resources investigation found that Eash engaged in inappropriate communication between a supervisor and subordinate and that Eash was not truthful during the investigation. (Doc. 6, ¶ 59; Doc. 6-1.) The letter also listed various sections of the County disciplinary policy that it claimed Eash violated: "Disregard for policies, procedures and rules in performance of job duties;" "Theft or any form of dishonesty;" "Instigating dissatisfaction among fellow employees;" and "Sexual harassment." (Doc. 6-1.)

In January 2019, Eash initiated this action by filing a complaint, which he subsequently amended in April 2019. The amended complaint alleges claims for (1) civil rights deprivation of liberty interest under 42 U.S.C. § 1983 against the County; (2) violation of the Fourth Amendment against all the Defendants; (3) intrusion upon seclusion invasion of privacy against the Individual Defendants; (4) defamation against the Individual Defendants; and (5) wrongful discharge in violation of public policy against all the Defendants.[1]

---

[1] The amended complaint does not specify whether Eash's defamation and wrongful discharge claims are being asserted against all of the defendants or just the Individual Defendants. With respect to the defamation claim, the original complaint specified that it was only being asserted against the Individual Defendants, and the amended complaint's failure to do so appears to be the result of a formatting error. (*Compare* Doc 1., p. 15, *with* Doc 6 pp., 19, 21.) In addition, any defamation claim against the County would almost certainly be subject to dismissal under the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"). With respect to Eash's wrongful discharge claim, the original and amended complaints fail to specify whether it is intended to be asserted against the County, but it too would be subject to dismissal under the PSTCA. *See Palazzolo v. Damsker*, No. 10-CV-7430, 2011 WL 2601536, at *5 (E.D. Pa. June 30, 2011) ("Wrongful termination is a common law tort claim that does not fall within the exceptions

## II.  **STANDARD OF REVIEW**

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). In reviewing a 12(b)(6) motion, the court must "accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them." *Taksir v. Vanguard Grp.*, 903 F.3d 95, 96–97 (3d Cir. 2018) (citation omitted). The facts alleged must be "construed in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (internal quotations, brackets, and ellipses omitted). But "[t]he court is not required to draw unreasonable inferences" from the facts. 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004).

The Third Circuit has detailed a three-step process to determine whether a complaint meets the pleading standard. *Bistrian v. Levi*, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. *Id*. at 365. Second, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id*. Third, the court

---

to immunity laid out in § 8542.") The court will therefore construe these claims as only being asserted against the Individual Defendants. If Eash believes he can plausibly assert a *viable* defamation or wrongful discharge claim against the County, he may file a second amended complaint within 21 days from the issuance of the accompanying order.

"look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III. **DISCUSSION**

### a. **The amended complaint states a claim for deprivation of liberty interest.**

The County moves to dismiss Eash's claim for deprivation of liberty interest.[2] "[T]o make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) (citations omitted) (emphasis original). In the context of public employment, this "stigma-plus" test "has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest." *Id.* (quoting *Codd v. Velger,* 429 U.S. 624, 628 (1977)). "To satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statement(s) (1) were made publicly, and (2) were false." *Hill*, 455 F.3d at 236 (citations omitted). The

---

[2] The court need not address the County's request to strike Eash's demand for punitive damages against it. The amended complaint does not make any express demand for punitive damages against the County, and Eash's brief represents that he is not seeking such relief.

"plus" prong is met so long as the statements were made in the course of the public employee's termination. *See id.* at 238.

Here, the amended complaint adequately states a claim for deprivation of liberty interest. Eash alleges that the County created a defamatory impression of him in connection with his termination by falsely writing in his termination letter that he violated the County's policy governing sexual harassment and by disseminating that letter inside and outside his department. The County's argument that this claim fails because Eash "has conceded to his underlying conduct concerning his sexually oriented text message exchange with C.H." and instead merely challenges "the County's opinion" that the messages rise to the level of sexual harassment is unavailing.[3] The statement in Eash's termination letter that he "violated" the County's employee discipline policy governing sexual harassment is not expressed

_____

[3] The sole case the County cites in support of this argument is distinguishable. In *Ersek v. Township of Springfield*, 102 F.3d 79, 81 (3d Cir. 1996), a golf professional that worked at a municipal golf course was investigated by the police for discrepancies in his record keeping. After investigating him for about one year, the police notified the Township Board of Commissioners (the "Board") of the results of the investigation, and the Board issued a statement falsely claiming that it had been aware of the investigation from its outset. *Id.* The golf professional brought claims against the Board for violations of his substantive due process rights and alleged that its statement hurt his future job prospects. *Id.* at 82. After the district court dismissed the claims on summary judgment, the golf professional appealed. On appeal, the Third Circuit affirmed because it found that the golf professional could not show that the false statement made by the Board caused him any harm— the Board's false comment regarding its involvement in the investigation was no worse than a truthful statement that the police were investigating him. *Id.* at 84-85. Put differently, a name clearing hearing "could not be used to prove [the golf professional's] innocence. He would still have hanging over his head the cloud of a police investigation." *Id.* at 85. In this case, the concerns expressed by the Third Circuit are absent. While Eash does admit to engaging in conversations with a colleague of a sexual nature, a hearing would nevertheless be capable of clearing his name with respect to whether he sexually harassed that colleague in violation of County policy.

as an opinion, and its truth or falsity can be determined through the straightforward task of applying Eash's underlying conduct to the policy itself. (*See infra* § IV(d).)

The County also argues that Eash's claim for deprivation of liberty interest should be dismissed because it fails to allege a custom or policy necessary to impose municipal liability under § 1983. To establish municipal liability pursuant to § 1983, a plaintiff "must show that they were deprived of rights, privileges, or immunities secured by the Constitution and laws, and that the deprivation of those rights was the result of an official government policy or custom." *Mulholland v. Gov't Cty. of Berks, Pa*., 706 F.3d 227, 238 (3d Cir. 2013). "A policy is a decision of a municipality's 'duly constituted legislative body' or of 'officials whose acts may fairly be said to be those of the municipality.'" *B.S. v. Somerset Cty*., 704 F.3d 250, 274 (3d Cir. 2013) (quoting *Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403–04 (1997)).

In this case, Eash alleges that Bixler and Stroud made a recommendation to the County Commissioners to terminate Eash on the basis of false information; that the County Commissioners ratified that decision and its underlying bases as outlined in Eash's termination letter; that the County Commissioners publicly disseminated the contents of the letter; and that the County Commissioners had final policymaking authority with respect to Eash's termination. This is sufficient to plead municipal liability under § 1983, since the "policy or custom" requirement is met where the

official or body in question is responsible for making policy in the particular area of municipal business, and where such authority is final and unreviewable. *Hill*, 455 F.3d at 245; *B.S. v. Somerset Cnty.*, 704 F.3d 250, 275 n. 36 (3d Cir.2013). Moreover, the County's argument that a plaintiff's allegations of custom or policy are subject to a heightened pleading requirement is based on outdated caselaw that has since been abrogated. *See Alston v. Parker*, 363 F.3d 229, 233 (3d Cir. 2004); *Evancho v. Fisher*, 423 F.3d 347, 351-52 (3d Cir. 2005). The amended complaint thus sufficiently alleges a deprivation of liberty interest claim against the County.

### b.  The amended complaint states a Fourth Amendment Claim.

#### i.  <u>Only Bixler is entitled to qualified immunity.</u>

The Individual Defendants argue they are entitled to qualified immunity on Eash's Fourth Amendment claim. Under the defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This defense calls for a two-step inquiry. First, the court must decide whether the plaintiff's allegations make out a violation of a statutory or constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, the court must determine whether the right was "clearly established" at the time of the alleged misconduct. *Id.* "[F]ederal courts are

'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Zaloga v. Borough of Moosic*, 841 F.3d 170, 174 (3d Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 822 (2015). "That does not require a prior precedent with indistinguishable facts, 'but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 719 (3d Cir. 2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "Existing precedent is sufficient to place a constitutional question beyond debate and to defeat qualified immunity only if it is controlling authority in the relevant jurisdiction, or if a robust consensus of cases of persuasive authority in the Court of Appeals has settled the question." *Id.* (internal citations and quotation marks and brackets omitted).

At the outset, Bixler is entitled to qualified immunity on Eash's Fourth Amendment claim because the amended complaint makes clear that she was not personally involved in searching Eash's cell phone. Eash's Fourth Amendment claim as asserted against Bixler will therefore be dismissed with prejudice.

However, Rinker and Stroud have not shown that they are entitled to qualified immunity at this time. Under the Fourth Amendment, a warrantless search is presumptively unreasonable. *United States v. Jacobsen*, 466 U.S. 109, 114 (1984). Nevertheless, several exceptions exist, and the Supreme Court has held that "the special needs of the workplace justify one such exception." *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 760–61 (2010) (internal quotation marks and citation omitted). Under this exception, where a reasonable expectation of privacy exists, a public employer's search must in turn be reasonable. *See Gwynn v. City of Philadelphia*, 719 F.3d 295, 302–03 (3d Cir. 2013). The Supreme Court has held in a plurality opinion that a non-criminal investigative search by a public employer is reasonable if there is "reasonable grounds for suspecting that the search will turn up evidence that the employee is guilty of work-related misconduct," and "the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the nature of the misconduct." *O'Connor v. Ortega*, 480 U.S. 709, 726 (1987); *see City of Ontario, Cal. v. Quon*, 560 U.S. 746, 761 (2010).

Here, Eash alleges that Rinker and Stroud violated his Fourth Amendment right to be free from unreasonable searches by searching the contents of his Facebook communications with C.H. using his personal cell phone. The Individual Defendants do not contest that a search occurred when Rinker and Stroud reviewed the contents of Eash's Facebook communications with C.H, or that Eash had a

reasonable expectation of privacy in those messages. The central question is therefore whether Rinker and Stroud had reasonable grounds for suspecting that a search of those messages would turn up evidence of work-related misconduct—a determination that cannot be made at this time.[4] The amended complaint alleges that C.H. approached human resources regarding her-off-the clock communications with Eash. While the communications were of a sexual nature, the amended complaint alleges that C.H. actively encouraged the conversations, that Eash was not a supervisor to C.H., and that personal and sexual contacts are the norm among County employees. Moreover, the nature of C.H.'s complaint to human resources and what she told them is unclear. Accepting Eash's allegations as true, the court cannot find as a matter of law that Rinker and Stroud had a reasonable basis for believing that the search would turn up evidence of workplace misconduct so as to fall within the workplace search exception to the warrant requirement.[5] The complaint thus states a Fourth Amendment claim against Rinker and Stroud.

---

[4] While it is true that questions of qualified immunity should be decided in the early stages of litigation, the court simply does not have sufficient facts before it to conclusively determine whether Rinker and Stroud's actions violated Eash's clearly established constitutional rights. *See Snyder v. Daugherty*, 899 F. Supp. 2d 391, 405 (W.D. Pa. 2012) ("The Third Circuit and its district courts have been wary of finding qualified immunity as a matter of law with respect to warrantless searches.").

[5] While Eash's termination letter attached to the complaint does indicate that Stroud and Rinker may have had a reasonable basis for conducting the search, its language is (understandably) couched in conclusory terms, and Eash's complaint repeatedly alleges that the letter is false and defamatory.

Moreover, Eash has a well-established Fourth Amendment right to be free from unreasonable searches, conducted by his public employer, of his personal electronic communications, and the Individual Defendants do not argue otherwise. Rinker and Stroud are therefore not entitled to qualified immunity at this time.[6]

ii. <u>The amended complaint sufficiently pleads liability by the County.</u>

Eash alleges that the County is liable for Rinker and Stroud's alleged Fourth Amendment violation based on its failure to train. In order to impose liability on the County based on a failure to train theory, a plaintiff must show "deliberate indifference to the rights of persons with whom those employees will come into contact" and a "causal nexus" between the failure to train and the plaintiff's injury. *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir.1999); *City of Canton v. Harris*, 489 U.S. 378, 391 (1989)). "To find deliberate indifference from a single-incident violation, the risk of [the plaintiff's] injury must be a 'highly predictable consequence'" of the failure to train. *Id.* at 225 (3d Cir. 2014) (*quoting Connick v. Thompson*, 563 U.S. 51, 64 (2011)). "Liability in single-incident cases depends on 'the likelihood that the situation will recur and the predictability that an officer lacking specific tools to

---

[6] For the avoidance of doubt, the court offers no opinion as to whether Eash is likely to prevail on the merits of his Fourth Amendment claim.

handle that situation will violate citizens' rights.'" *Thomas*, 749 F.3d 217, 223–24 (3d Cir. 2014) (quoting *Bryan Cnty.*, 520 U.S. at 409) (brackets omitted).

Here, Eash only generally alleges that Rinker's and Stroud's search of his communications were attributable to the County's failure to train its employees. However, the complaint does allege that personal and sexual fraternization between employees regularly occurs inside and outside the workplace, including allegations that sex occurs inside the workplace (Doc. 6 ¶ 63); that sex, "sometimes in groups," has occurred between managers and subordinates at out-of-work functions (*id.* ¶ 67); that female employees and supervisors "frequently communicate statements of a sexual nature…during work hours (*id.* 69); that a supervisor uses Facebook to "constantly" promote fraternization (*id.* ¶ 71); and that a local restaurant provides a "customary place for fraternization and alcohol consumption" by employees (*id.* ¶ 72). While these allegations obviously do nothing to show a pattern of Fourth Amendment violations, they are sufficient to support a plausible inference that Eash's alleged Fourth Amendment injury was a highly predictable consequence of the failure to train employees on privacy rights in the context of investigating potential inappropriate communications between employees. *See Thomas*, 749 F.3d at 225; *Robinson v. Fair Acres Geriatric Ctr.*, 722 F. App'x 194, 200 (3d Cir. 2018).

Similarly, the purported frequency of employee communications of a personal and sexual nature gives rise to a plausible inference that similar situations are likely

to recur, in turn supporting the County's alleged deliberate indifference. Moreover, the alleged deficiency in training human resources employees on the privacy rights of employees is related to the ultimate injury—invading Eash's privacy rights in his personal communications. The complaint therefore adequately alleges a Fourth Amendment claim against the County.

### c. The Individual Defendants are not entitled to absolute immunity from Eash's state law claims.

The Individual Defendants argue that they are entitled to absolute immunity. Pennsylvania law exempts high public officials "from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers." *Smith v. Borough of Dunmore*, 633 F.3d 176, 181 (3d Cir. 2011) (quoting *Lindner v. Mollan*, 544 Pa. 487, 677 A.2d 1194, 1195 (1996)). While absolute immunity serves the practical function of protecting high public officials from the "expense, publicity, and danger of defending the good faith of [their] actions before the jury," it also serves the "deeper purpose [of protecting] society's interest in the unfettered discharge of public business and in full public knowledge of the facts and conduct of such business." *Montgomery v. City of Philadelphia*, 392 Pa. 178, 140 A.2d 100, 103 (Pa. 1958). In an effort to balance societal interests in encouraging uninhibited participation by public officials in public business against the possibility that an individual may

suffer irreparable harm due to the actions of a public official, courts have concluded that only "high public officials" should be entitled absolute immunity. *See Osiris Enters. v. Borough of Whitehall*, 877 A.2d 560, 566–67 (Pa. Commw. Ct. 2005). "An official's status as a high public official for purposes of absolute immunity is determined on a case-by case basis, and depends on the nature of his duties, the importance of his office, and particularly whether. . . he has policy-making functions." *Zugarek*, 214 F.Supp.2d at 479.

Here, the Individual Defendants argue that they are entitled to absolute immunity because the initial complaint alleged that they maintained "final policymaking authority," while the amended complaint omits and contradicts that allegation by claiming that "county human resource departments do not make public policy for a county." This argument raises questions of judicial estoppel, which requires "a finding of bad faith on the part of the party against whom the doctrine is invoked." *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 253 (3d Cir. 2010). On one hand, Eash's amended allegation is clearly in tension with the initial complaint and its primary basis does appear to be a desire to stave off dismissal based on absolute immunity. On the other hand, neither allegation is particularly informative—they both resemble legal conclusions to which the court gives little weight—and it would be inequitable to dismiss the Individual Defendants based on a single conclusory statement that has since been amended.

More importantly, applying absolute immunity here would extend the doctrine too far. Regardless of the verbiage contained in the initial complaint, human resource officers do not traditionally make policy in the vein of officials such as council members, *Smith v. Borough of Dunmore*, 633 F.3d 176, 181–82 (3d Cir. 2011), school board members, *Zugarek*, 214 F.Supp.2d at 479, and mayors. *McKibben v. Schmotzer*, 700 A.2d 484 (Pa. Super. Ct. 1997); *see Ballas v. City of Reading*, 168 F. Supp. 2d 398, 403 (E.D. Pa. 2001) (City director of human resources was not entitled to absolute immunity where he discharged his "arguably discretionary" duty to "determine the appropriate disciplinary measures for employees" by applying "specific criteria that are outlined in the personnel code"). There are no facts before the court to indicate that the Individual Defendants are any exception. The Individual Defendants therefore do not have absolutely immunity from Eash's state law claims.

### d. The amended complaint states a claim for intrusion upon seclusion.

The Individual Defendants move to dismiss Eash's claim for intrusion upon seclusion. To state a claim for intrusion upon seclusion under Pennsylvania law, "plaintiffs must allege conduct demonstrating 'an intentional intrusion upon the seclusion of their private concerns which was substantial and highly offensive to a reasonable person, and aver sufficient facts to establish that the information disclosed would have caused mental suffering, shame or humiliation to a person of

ordinary sensibilities.'" *Boring v. Google Inc*., 362 F. App'x 273, 278–79 (3d Cir. 2010) (quoting *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co*., 570 Pa. 242, 809 A.2d 243, 247 (2002)).

Here, Eash adequately alleges that Rinker and Stroud committed intrusion upon seclusion by reviewing the contents of his Facebook communications with C.H., which included photographs of Eash partially disrobed after a "fire-cupping session" and him discussing his sexual preferences. While Eash's privacy interests in this context must be balanced against the County's legitimate interest in preserving harmony among its employees and preserving normal operations, *Borse*, 963 F.2d at 627, that determination is a fact question that cannot be made at this stage based on the allegations before the court. (*See* § IV(a)(i))

The Individual Defendants' argument that they could not have intruded upon Eash's seclusion because the amended complaint alleges that they already possessed the conversations between Eash and C.H. is intuitively appealing. However, they provide no authority in support their argument, and the tort of intrusion upon seclusion is intended to remedy injury associated with the intrusion itself, not merely those indirectly suffered as a result of the intrusion. *See* Restatement (Second) of Torts § 652B, cmt. b (1977) ("The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined.").

That said, if the Individual Defendants did actually already possess the information they subsequently gleaned from searching Eash's cell phone, that fact might diminish the nature of the intrusion itself and support the Individual Defendants argument that the invasion was justified. Such a determination is a fact question that cannot be resolved at this stage. The amended complaint therefore states an intrusion upon seclusion claim.

However, Eash's intrusion upon seclusion claim as asserted against Bixler fails because the amended complaint does not allege that Bixler took any action to personally intrude upon his seclusion. Eash's intrusion upon seclusion claim as asserted against Bixler will therefore be dismissed without prejudice.

**e. The amended complaint states a claim for defamation.**

The Individual Defendants also move to dismiss Eash's defamation claim. "To state a claim for defamation, a plaintiff must show: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion." *Byars v. Sch. Dist. of Philadelphia*, 942 F. Supp. 2d 552, 563 (E.D. Pa. 2013) (citing 42 Pa.C.S. § 8343(a)). "Whether a communication is capable of defamatory meaning is a 'threshold issue' to be

determined by the court." *Burton v. Teleflex Inc.*, 707 F.3d 417, 434 (3d Cir. 2013) (quoting *Kurowski v. Burroughs*, 994 A.2d 611, 617 (Pa. Super. Ct. 2010)). "The statement must be examined in context to determine its likely effect on the reader, and the Court should evaluate the effect it is likely to produce in the minds of the average persons among whom it is intended to circulate." *Id.* (internal quotation marks and citations omitted).

Here, the amended complaint adequately asserts a claim for defamation against Rinker and Bixler because it alleges that Eash's termination letter was written by Rinker and directed to be written by Bixler and falsely states that he violated the County's policy governing sexual harassment, and that the Defendants disseminated the letter to persons inside and outside his department.[7] As with Eash's deprivation of liberty interest claim, the Individual Defendants' argument that they cannot be liable for defamation because their statement "is merely an opinion as to the underlying undisputed facts" is not persuasive. The statement that Eash committed sexual harassment is not expressed as an opinion, and its truth or falsity

---

[7] Eash's allegation that the Defendants defamed him by asserting in his termination letter that he committed theft is unpersuasive. The termination letter provides that Eash violated the County's policy governing "[t]heft or any form of dishonesty." Read in the context of the surrounding paragraphs, which make clear that dishonesty, and not theft, formed one of the bases for Eash's termination, it would be unreasonable to interpret the reference to the policy as a purported statement of fact that Eash committed theft. *See St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309, 1317 (3d Cir. 1994).

is readily capable of being determined by applying Eash's underlying conduct to the policy at issue. At least one other federal court has found the same:

> [I]n the context of a sexual harassment policy violation, it is a relatively straightforward process to compare evidence of a person's conduct to conduct which is prohibited by objective policy guidelines. Therefore, this Court finds that the alleged statements regarding Plaintiff's violation of his employer's sexual harassment policy are statements which could be reasonably construed as objectively verifiable. The Court cannot say, as a matter of law, that these statements are non-actionable.

*Gerrard v. Garda,* No. 08-CV-1146, 2009 WL 269028, at *3 (C.D. Ill. Jan. 30, 2009); *see also Moore v. Arthur Andersen, L.L.P.*, No. 398-CV-2773L, 1999 WL 354235, at *2 (N.D. Tex. May 25, 1999).

The amended complaint therefore adequately states a claim for defamation against Rinker and Bixler. Nevertheless, Eash's defamation claim will be dismissed without prejudice as to Stroud since he fails to allege that Stroud had any role in drafting the termination letter.

### f. The amended complaint states a claim for wrongful discharge.

The Individual Defendants also move to dismiss Eash's claim for wrongful discharge in violation of public policy. "In Pennsylvania, an employer may terminate an employee without cause provided that 'the dictates of public policy,' contract, or a statutory provision do not prohibit such termination." *Gillispie v. RegionalCare Hosp. Partners Inc.*, 892 F.3d 585, 597 (3d Cir. 2018) (quoting *Spierling v. First Am. Home Health Servs., Inc.*, 737 A.2d 1250, 1253 (Pa. 1999)). A narrow exception

exists "only in the most limited of circumstances where the termination implicates a clear mandate of public policy in this Commonwealth." *McLaughlin v. Gastrointestinal Specialists, Inc.*, 561 Pa. 307, 750 A.2d 283, 287 (2000). "[T]he employee must point to a clear public policy articulated in the constitution, in legislation, an administrative regulation, or a judicial decision." *Hunger v. Grand Central Sanitation*, 670 A.2d 173, 175 (Pa. Super. 1996). "Pennsylvania courts have construed the public policy exception to at-will employment narrowly, lest the exception swallow the general rule." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 111 (3d Cir. 2003), *as amended* (Jan. 20, 2004) (citation omitted).

Here, Eash alleges that the Individual Defendants committed wrongful discharge because he was terminated in connection with the alleged unreasonable search of his cell phone. In their motion, the Individual Defendants argue that an employer cannot be liable for wrongful discharge based on an alleged violation of invasion of privacy. However, while it is true that the public policy exception to the at-will employment doctrine is narrowly construed, the Third Circuit and Pennsylvania courts have not shut the door to wrongful discharge claims based on underlying invasions of privacy. *See Borse,* 963 F.2d at 622 ("[W]e believe that when an employee alleges that his or her discharge was related to an employer's invasion of his or her privacy, the Pennsylvania Supreme Court would examine the facts and circumstances surrounding the alleged invasion of privacy."); *Geary v. U.*

*S. Steel Corp.*, 319 A.2d 174, 180 (1974) ("It may be granted that there are areas of an employee's life in which his employer has no legitimate interest. An intrusion into one of these areas by virtue of the employer's power of discharge might plausibly give rise to a cause of action, particularly where some recognized facet of public policy is threatened.").

The Western District of Pennsylvania case relied upon by the Individual Defendants is distinguishable. In *Rogers v. International Business Machines Corporation*, 500 F. Supp. 867, 870 (W.D. Pa. 1980), the Western District dismissed invasion of privacy and wrongful discharge claims asserted by a plaintiff against his former employer after he was terminated for poor work performance following an investigation into his conduct. The court found—on summary judgment—that the former employer's investigation was "limited to interviews of full time employees and an examination of company records" and that the former employer "acted reasonably" in investigating and terminating the plaintiff. *Id.* at 869. In this case, by contrast, Eash alleges that the investigation intruded his privacy by involving an unjustifiable search of his personal communications, and that his ensuing termination based on the information gleaned from that search was unjustifiable. Moreover, the extent to which the Defendants acted reasonably in conducting an investigation and terminating Eash is a fact question that cannot be answered based on these pleadings. (*See supra,* § IV(b)(1).) Defendants thus have not met their

burden of showing that the amended complaint fails to state a wrongful discharge claim.

## IV.    <u>**Conclusion**</u>

For the reasons set forth above, the Defendants' motion to dismiss the amended complaint will be granted insofar as the Court will (1) dismiss with prejudice the Fourth Amendment claim as asserted against Bixler; (2) dismiss without prejudice the defamation claim as asserted against Stroud; and (3) dismiss without prejudice the invasion of privacy claim as asserted against Bixler.


<u>*s/Sylvia H. Rambo*</u>
SYLVIA H. RAMBO
United States District Judge


Dated: March 30, 2020